UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULEE LANDAU,

Plaintiff,

v.

IRVING MARC LANDAU,

Defendant.

_____/

Case No. 21-cv-11958

U.S. District Court Judge
Gershwin A. Drain

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (ECF NO. 15); AMENDING SEPTEMBER 16, 2021 ORDER (ECF No. 8); STRIKING ECF Nos. 1-2, 1-3, 1-4 AND 1-5; AND UNSTRIKING ECF Nos. 4, 5, 6, AND 7

### I.    INTRODUCTION

On August 23, 2021, Julee Landau ("Plaintiff") filed the instant action against her brother, Irving Marc Landau ("Defendant").  ECF No. 1.  Plaintiff alleges Defendant wrongfully retained several hundred thousand dollars in life insurance benefits that were paid by Transamerica Insurance Company ("Transamerica") upon the death of Plaintiff and Defendant's mother, Alene Landau.  *Id.* at PageID.1.

Presently before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Procedure 12(b)(6).  ECF No. 15.  The Motion is fully briefed.  *See*

1

ECF Nos. 20, 21.  Upon review of the parties' submissions, the Court concludes oral argument will not aid in the disposition of this matter.  Therefore, the Court will resolve the instant Motion on the briefs.  *See* E.D. Mich. LR § 7.1(f)(2).  For the following reasons, the Court will **GRANT IN PART AND DENY IN PART** Defendant's Motion to Dismiss (ECF No. 15).  Specifically, the Court will **GRANT** the Motion as to Count IV and **DENY** the Motion as to Plaintiff's remaining claims.

## II.   FACTUAL & PROCEDURAL BACKGROUND

### A. Factual Background

The following facts are alleged in the Complaint, which the Court takes as true for the purposes of the Motion to Dismiss.

On or about April 25, 1995, Alene Landau, Plaintiff and Defendant's mother, arranged for a life insurance policy to be issued on her life by Transamerica (the "Policy").[1]  Compl., ECF No. 1, PageID.2.  Alene listed Plaintiff and Defendant— her daughter and son, respectively—as the owners and equal beneficiaries of the Policy.  *Id.* at PageID.2-3.  The Policy, which was assigned number 92502033, had a face amount of $837,000.00.  *Id.* (citing Policy, ECF No. 4).

---

[1] For clarity's sake, the Court will use first names when referring to either party or their mother by name.

2

In late 2005 or early 2006, Alene became aware Defendant was experiencing financial problems and at risk of bankruptcy. *Id.* at PageID.3. Among other things, Alene became concerned her son's creditors could assert a claim against the Policy and negatively impact her daughter's interest. *Id.* Thus, Alene wanted to split the Policy into two separate policies worth equal amounts so that each child could separately own and obtain benefits from one of the newly created policies. *Id.* Specifically, Alene chose to divide the Policy so Defendant could, if he chose, surrender his portion for its cash value and so Plaintiff's portion would not be impacted by Defendant's potential bankruptcy. *Id.* at PageID.3-4 (citing A. Landau Ltr., ECF No. 5 ("They have agreed to divide the policy so it has two separate owners, and if Irving wishes to borrow $73,000[,] the current value of his half[,] he can without affecting Julee or as Steve Cohn stated if he declares bankruptcy[,] it is considered an asset & the courts can go after his half. [A]t least Julee's half is still protected . . . .")). Alene discussed this decision with her son and daughter, both together and separately. *Id.* at PageID.4.

In early 2006, Plaintiff and Defendant as owners of the Policy and Alene as the inured executed a form requesting to split the Policy. *Id.* (citing Policy Split App., ECF No. 6). The Policy was split into two equal policies worth $418,500, with the cash surrender value of the initial Policy also split equally between the two

3

new policies. *Id.* Plaintiff's policy was assigned number 92551193 ("Plaintiff's Policy"), and Defendant's was assigned number 92551192 ("Defendant's Policy"). *Id.*; Def. Mot. to Dismiss, ECF No. 15, PageID.115. After obtaining his policy, Defendant terminated it to procure the cash surrender value. Compl., ECF No. 1, PageID.4. Plaintiff did not attempt to acquire or share in the proceeds from Defendant's Policy. *Id.* at PageID.4-5.

Alene died on June 1, 2021. *Id.* at PageID.5. Plaintiff thus notified Transamerica of her mother's death and submitted a claim for the insurance proceeds under Plaintiff's Policy. *Id.* Transamerica paid $427,820.34 as a death benefit under Plaintiff's Policy; however, Transamerica paid half of that sum to each party because both were designated as beneficiaries of Plaintiff's Policy. *Id.* "Plaintiff never knew or understood that any action needed to be taken by her, when she received Plaintiff's Policy several years ago, to remove Defendant as a beneficiary of the Policy." *Id.*

Upon learning that Defendant had received half of the insurance proceeds under Plaintiff's Policy, Plaintiff's counsel wrote Defendant demanding he not cash the insurance check or return the funds to Plaintiff if he had already cashed the check. *Id.* at PageID.6. Defendant, however, has retained the funds. *Id.*

4

### B. Procedural Background

Plaintiff brings claims for unjust enrichment (Count I), breach of implied contract in fact (Count II), breach of contract implied in law (Count III), and conversion (Count IV). *Id.* at PageID.6-8.

As stated above, Defendant moves to dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. ECF No. 15. Defendant argues that "[a]lthough Alene was the named insured, she did not own th[e] [P]olicy" and thus "had no authority to change the ownership or beneficiary designations on th[e] [P]olicy." *Id.* at PageID.113. Accordingly, when the Policy was split into two separate policies owned individually by Plaintiff and Defendant, respectively, "[t]he beneficiary designations for both policies remained the same— Julee and Marc." *Id.* at PageID.114. Defendant emphasizes that the application to split the Policy explicitly includes a clause stating, "Unless the right to change the beneficiary is specifically exercised by the New Owner, the beneficiary of the Policy shall be the same as the beneficiary of record at the time of this Assignment." *Id.* at 115 (citing Split App., ECF No. 6). Thus, Defendant asserts, "Julee now seeks to obtain the proceeds paid by Transamerica to Marc contrary to the beneficiary designation." *Id.* at PageID.113. In contrast, Defendant contends his policy "was

5

no longer in effect" when Alene died, so "the beneficiary designations on his policy were no longer relevant." *Id.* at PageID.115.

Defendant also specifically attacks each of Plaintiff's claims.  First, Defendant avers, "Under Michigan law, a claim for unjust enrichment or other equitable relief will not sound where there is an express contract in place covering the same subject—here the insurance contract." *Id.* at PageID.118.  In the alternative, Defendant maintains "[P]latiniff cannot meet the first requirement for unjust enrichment, as defendant received a distribution of life insurance proceeds not from [P]laintiff herself, but from the insurance carrier," and "[P]laintiff cannot establish the second requirement for unjust enrichment either as defendant did not cause an inequity to [P]laintiff where [D]efendant had neither the authority nor the ability to change the beneficiary designations contained in [P]laintiff's policy." *Id.* at PageID.119.  Defendant also argues Plaintiff "is legally charged with knowledge of the [P]olicy's terms and contents" regardless of whether she read it. *Id.* at PageID.120.

Second, Defendant repeats that a contract will only be implied when there is no express contract because there cannot be both an express and implied contract covering the same subject matter at the same time. *Id.* at PageID.121.  He further asserts that under Michigan law, "[a] life insurance policy itself contains the entire

6

contract between the insurance carrier, a policy owner, the insured party, *and* the designated beneficiaries." *Id.* at PageID.122 (emphasis in original).  Thus, according to Defendant, "Julee may not now invoke parole evidence in an attempt to contradict the express provisions of the life insurance policy." *Id.*  Further, Defendant contends an insurer must pay a life insurance policy to the person or people named as beneficiary under the policy.[2]  *Id.* at PageID.123.

Finally, Defendant avers, "Plaintiff does not plead her conversion claim with any specificity." *Id.* at PageID.124.  Because Plaintiff references treble damages in her conversion claim, Defendant presumes she intends to invoke statutory conversion under MCL § 600.2919a.  Defendant argues "that simply retaining money does not amount to buying, receiving, or aiding in the concealment of stolen, embezzled or converted property." *Id.* at PageID.126 (quoting *Akno 1010 Mkt. St. St. Louis Missouri LLC v. Pourtaghi*, No. 218-CV-13498-TGB-MKM, 2021 WL

---

[2] Defendant denied that Plaintiff can satisfy the elements of a claim for breach of contract implied in fact but did not brief the issue "because this count is easily dismissed on other grounds." ECF No. 15, PageID.124.  Notably, Defendant also failed to address Plaintiff's argument that she has plausibly pleaded this claim in his Reply.  While Defendant reserved the right to provide further briefing on this subject if requested by the Court, the Court felt additional briefing was unnecessary for the reasons discussed in Section III.B.2 *infra*.

7

3810698 (E.D. Mich. Aug. 26, 2021) (internal quotation marks omitted)).   Thus, Defendant maintains Plaintiff cannot establish a statutory conversion claim.  *Id.*

Plaintiff filed a timely response.  ECF No. 20.  She states, "Neither Alene nor Julee removed Irving as a beneficiary of the policy given to Julee because they did not realize they needed to do so, inasmuch as Alene, Julee and Irving understood and agreed that the policy given to Julee would benefit only her, just as the policy given to Irving benefitted only him."  *Id.* at PageID.146-47.  Specifically, Plaintiff asserts:

> Alene and her two children understood and agreed that: the new policy received by Julee would have a face amount equal to one-half of the original policy, and a cash surrender value equal to one-half of the cash surrender value of the original policy; the policy given to Irving would be in the same amounts; and Irving was to have no rights or obligations under the policy given to Julee, and conversely, Julee was to have no rights or obligations with respect to the policy given to Irving.  That is precisely why, after Irving received his policy, he was free to cash it in and keep the entire cash surrender value for himself – and it is exactly what he did.

*Id.* at PageID.149.  Accordingly, Plaintiff contends she is entitled to equitable relief because she is not alleging a breach of the insurance policy—*i.e.*, the contract between herself and Transamerica.  *Id.* at PageID.151.   Instead, she claims

8

Defendant has violated the agreement between Alene, Irving, and herself that Defendant would not have any interest in Plaintiff's Policy.  *Id.*

Additionally, Plaintiff maintains she has demonstrated the elements of each of her claims.  First, Plaintiff avers Defendant has been unjustly enriched: he received a benefit from her because she was the sole owner of Plaintiff's Policy, both Plaintiff and Defendant understood that they would be the sole beneficiaries of their individually owned policies, and Defendant nevertheless kept the benefits at Plaintiff's expense.  *Id.* at PageID.150.  Further, Plaintiff argues "inequity has resulted to Julee due to Irving's retention of those benefits and refusal to pay them over to Julee."  *Id.*  Second, Plaintiff asserts she has sufficiently pleaded breach of a contract implied in fact based on the parties' actions as described in the Complaint.  *Id.* at PageID.153-55.  Third, Plaintiff contends contracts implied in law arise "when a party retains money or benefits which in justice and equity belong to another."  *Id.* at PageID.156 (quoting *PNC Bank, Nat. Ass'n v. Goyette Mech. Co.*, 88 F. Supp. 3d 775, 784 (E.D. Mich. 2015)) (emphasis omitted).  Thus, she has sufficiently pleaded a breach of a contract implied in law based on Defendant's refusal to disgorge the benefits he received under Plaintiff's Policy.  *Id.* at PageID.157.

Lastly, Plaintiff clarifies that she brings claims for conversion under both MCL § 600.2919a(1)(a) and common law.  *Id*.  She avers she has plausibly pleaded Defendant knew exerting domain over the funds he received from Plaintiff's Policy "was wrongful, as it was flatly inconsistent with his agreement with Julee and Alene."  *Id.* at PageID.158.  Therefore, according to Plaintiff, his refusal to relinquish those funds constitutes misappropriation and conversion.  *Id*.

In his Reply, Defendant declares Alene's concern, which purportedly led to the Policy split, "is both irrelevant and legal incorrect" because Plaintiff's interest in the Policy could not have been the subject of Defendant's Chapter 7 bankruptcy proceedings.  ECF No. 21, PageID.197, PageID.198.  Defendant also reiterates that the Policy was fully performed according to its terms and that Plaintiff could have changed the beneficiary designation if she so desired.  *Id*.  Moreover, he reasserts that "[b]ecause of the existence of the insurance contract[,] there can be no claim for equitable relief."  *Id.* at PageID.201.  Finally, Defendant contends "receipt and retention of the proceeds of an insurance policy under a beneficiary designation cannot logically be a wrongful act."  *Id*.

10

### III.   LAW & ANALYSIS

## A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") allows a district court to assess whether a plaintiff has stated a claim upon which relief may be granted.  To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) ("Rule 8(a)(2)").  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  To meet this standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678–80 (applying the plausibility standard articulated in *Twombly*).

When considering a Rule 12(b)(6) motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff and accept all his or her factual allegations as true.  *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).  While a court is required to accept the *factual allegations* in a complaint as true,

11

*Twombly,* 550 U.S. at 555, the presumption of truth does not apply to a claimant's *legal conclusions. Iqbal,* 556 U.S. at 678. Therefore, to survive a motion to dismiss, the plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555) (internal citations and quotation marks omitted).

## B. Discussion

### 1. The Court will consider both parties' exhibits.

As a threshold matter, Defendant argues that while it is appropriate for the Court to consider the exhibit submitted with Defendant's Motion to Dismiss, the Court should not consider the exhibits initially submitted with the Complaint because they were stricken. ECF No. 15, PageID.117 n. 1.

A district court generally reviews only the allegations set forth in the complaint when determining whether to grant a Rule 12(b)(6) motion to dismiss; however, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). The court may also consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Rondigo, L.L.C. v.*

12

*Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008)).

Here, Plaintiff attached four exhibits to her Complaint.  *See* ECF No. 1. However, several of these exhibits did not comport with the redaction requirement of Federal Rule of Civil Procedure 5.2.  Specifically, they contained the social security numbers and birth dates of both parties and their mother.  As such, at Plaintiff's counsel's request, "all of the original exhibits" were stricken and Plaintiff was given to leave to re-file the exhibits with the identifying information redacted. ECF No.8, PageID.86.  Due to what appears to be a clerical error, the properly redacted exhibits were stricken from the electronic docket instead of the ones initially filed with the Complaint.[3]  Accordingly the Court will amend its September 16, 2021 Order such that the initially filed exhibits are stricken and the properly redacted exhibits are restored to the docket.  As Plaintiff attached these exhibits to her Complaint, the Court may consider them in its Rule 12(b)(6) analysis.  *Amini*, 259 F.3d at 502 (6th Cir. 2001).

---

[3] Plaintiff filed the properly redacted exhibits on September 14, 2021 (ECF Nos. 4-7), but the Order to Strike Exhibits was entered on September 16, 2021 (ECF No 8). Thus, the Order was inadvertently applied to the newly filed exhibits instead of the ones initially filed with the Complaint.

Notably, the Court would have considered Defense Exhibit A in its analysis regardless of whether it restored Plaintiff's exhibits.  In addition to attaching her exhibits to her Complaint, Plaintiff discussed them at length therein.  Because Defense Exhibit A is an excerpt of one of the documents Plaintiff submitted,[4] Defense Exhibit A is "referred to in the [C]omplaint and [is] central to the claims contained therein."  *Rondigo*, 641 F.3d at 681 (quoting *Bassett*, 528 F.3d at 430).

### 2.  Plaintiff can bring equitable claims.

As discussed in Section II.B *supra*, Plaintiff does not allege Transamerica (or Defendant) breached Transamerica's contract with Plaintiff—Plaintiff's Policy. Instead, Plaintiff claims Defendant breach the agreement between Alene, Irving, and herself that each of the parties would solely own and receive the benefit from their half of the Policy.  She thus argues Defendant "misses the point" by focusing on the wrong contract.  ECF No. 20, PageID.151 n. 3.

The Court finds this assertion persuasive.  While the two agreements concern related topics; they are ultimately different agreements.  They involve different parties: Transamerica and Plaintiff, on the one hand, and Alene, Plaintiff, and

---

[4] Defendant's Reply refers to exhibits that were not attached to his Motion to Dismiss and have not otherwise been provided to the Court.  The Court is thus unable to determine to what extent these exhibits are "referred to in the [C]omplaint and are central to the claims contained therein."  *Rondigo*, 641 F.3d at 681.  Thus, the Court will not consider Defense Exhibits B, C, D, E, and F in its analysis.

Defendant, on the other hand.  Moreover, the agreements can operate independently of one another: Plaintiff does not dispute that Transamerica complied with Plaintiff's Policy by dispersing the funds in accordance with beneficiary designation, but she alleges that Defendant breached the agreement amongst their family by not disgorging the funds he received under Plaintiff's Policy.

Furthermore, Michigan courts have accepted that it is possible to waive entitlement to insurance benefits via subsequent agreement despite no changes being made to a beneficiary designation.  For example, in *MacInnes v. MacInnes*, the defendant's former wife failed to change the beneficiary designation on her life insurance policy after their divorce.  260 Mich. App. 280, 282 (2004).  Relying on the divorce judgment, in which the defendant waived his right to benefit under his former wife's insurance policy, her estate sought disgorgement of the death benefits.  *Id.*  The Michigan Court of Appeals rejected the defendant's argument that the suit was preempted by the Employee Retirement Income Security Act ("ERISA").  *Id.* at 285-86.  The *MacInnes* court went on to find the divorce judgment was properly construed as a contract even though the parties had not signed it; thus, the defendant was bound by the waiver provision in that judgment.  *Id.* at 289.  *See also Moore v. Moore*, 266 Mich. App. 96, 101 (2005) ("Plaintiff is not entitled to the proceeds from

15

the insurance policy and the pension death benefits because she expressly waived any entitlement in the divorce judgment.").

Even the Sixth Circuit Court of Appeals, which has found that ERISA preempts divorce judgments with provisions purporting to change beneficiary designations, like the ones relied on in *MacInnes* and *Moore*, has held that equitable claims by parties competing over insurance benefits are permissible as long as they do not involve the insurance plan administrator. *See Cent. States, Se. & Sw. Areas Pension Fund v. Howell,* 227 F.3d 672, 678 (6th Cir. 2000) ("[T]here is no precedent binding on this Court on the issue of whether, once the beneficiary is determined, ERISA preempts all causes of action and possible remedies based upon state law that might be traced to the ERISA plan proceeds.").  Consequently, the United States District Court for the Eastern District of Michigan recognizes "a fundamental difference between state law causes of action that challenge a plan beneficiary's right to *receive* the proceeds of an ERISA plan and those that seek to challenge a plan beneficiary's right to *keep* the proceeds of an ERISA plan." *Brown v. Wright,* 511 F.Supp.2d 850, 853 (E.D. Mich. 2007) (emphasis in original).  Thus, once plan benefits have been disbursed, courts in the Sixth Circuit have authority to enact equitable remedies regarding the retention of those benefits. *See, e.g., Teenor v. LeBlanc,* No. 18-CV-12364, 2019 WL 2074585, at *4 (E.D. Mich. May 10, 2019)

16

"(Under these circumstances, the laws of equity would appear to compel the Court to impose a constructive trust over the Decedent's life insurance proceeds in Barbara Teenor's favor.").

Accordingly, the Court concludes Plaintiff's equitable claims are not barred by the existence of the insurance policy "contract" and will consider whether she has plausibly pleaded the elements of those claims.

### i. Plaintiff has plausibly pleaded her unjust enrichment claim (Count I).

Under Michigan law, unjust enrichment requires the plaintiff to establish: "(1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *Karaus v. Bank of New York Mellon*, 300 Mich. App. 9, 22–23 (2012). "Whether a specific party has been unjustly enriched is generally a question of fact," but "whether a claim for unjust enrichment can be maintained is a question of law." *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 193 (2006). "[T]he key to determining whether enrichment is unjust is determining whether a party unjustly received and retained an independent benefit." *Landstar Express Am., Inc. v. Nexteer Auto. Corp.*, 319 Mich. App. 192, 205 (2017) (alteration in original) (quoting *Karaus*, 300 Mich. App. at 23). If the plaintiff meets their burden, "the law will imply a contract in order to prevent unjust enrichment." *Belle Isle Grill Corp.*

17

*v. City of Detroit*, 256 Mich. App. 463, 478 (2003) (citing *Martin v. East Lansing School Dist.*, 193 Mich. App. 166, 177 (1992)).

Here, Plaintiff has plausibly pleaded an unjust enrichment claim. The parties agree that Plaintiff was the sole owner of her policy. Plaintiff has pleaded that the parties, along with their mother, agreed Plaintiff was to receive all the benefit of that policy. The parties also agree Defendant received half the benefits under Plaintiff's Policy, and he has refused to disgorge those benefits. Plaintiff claims this was in violation of the family's agreement and thus denies her of proceeds to which she is rightfully entitled. She has thus alleged Defendant received a benefit from her and that inequity has resulted due to Defendant's retention of the benefit. *See Karaus*, 300 Mich. App. at 22–23. That the benefit was distributed by Transamerica does not vitiate Plaintiff's contention that the parties had agreed she was entitled to the entirety of the benefits under her policy. Accordingly, Defendant is not entitled to dismissal of this claim (Count I).

### ii. Plaintiff has plausibly pleaded her implied contract claims (Count II and Count III).

Under Michigan law, "[a] party asserting a breach of contract must establish . . . that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Const., Inc.*, 495 Mich. 161, 178 (2014). "The elements of a valid contract in

18

Michigan are: 1) parties competent to contract, 2) a proper subject matter, 3) a legal consideration, 4) mutuality of agreement, and 5) mutuality of obligation." *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003) (citing *Thomas v. Leja*, 187 Mich. App. 418, 422 (1990)).  In Michigan,

> [t]here are two kinds of implied contracts: one implied in fact and the other implied in law.  The first does not exist, unless the minds of the parties meet, by reason of words or conduct.  The second is quasi or constructive, and does not require a meeting of minds, but is imposed by fiction of law, to enable justice to be accomplished, even in case no contract was intended.

*Reyes-Trujillo v. Four Star Greenhouse, Inc.*, 513 F. Supp. 3d 761, 799 (E.D. Mich. 2021) (quoting *Contship Containerlines, Inc. v. Howard Indus., Inc.*, 309 F.3d 910, 914 (6th Cir. 2002)).

Here, Plaintiff has plausibly pleaded both a contract implied in fact and one implied in law.  The existence of the contract implied in fact is evidenced by Plaintiff's allegations regarding the parties' conduct surrounding the splitting of the Policy and thereafter.  Plaintiff asserted that each of the parties met with their mother regarding the decision to split the Policy, both together and separately.  Plaintiff further claimed that the specific purpose behind splitting the Policy was to protect her interest in the Policy from Defendant's financial troubles and allow Defendant to obtain the cash surrender value of his interest in the Policy if he chose to do so.

19

Defendant neither disputes that he obtained the cash surrender value of Defendant's Policy, nor that he did not share any of those proceeds with his sister, nor that Plaintiff never sought to obtain any portion of those proceeds.  From all this, the Court can plausibly infer Plaintiff and Defendant, along with their mother, entered a contract implied in fact, and that the basis of the contract was that the proceeds from Plaintiff and Defendant's individually owned policies would be theirs alone.

Having found Plaintiff has plausibly pleaded a contract implied in fact, the Court also concludes Plaintiff has plausibly pleaded Defendant breached that contract by retaining the proceeds he received under Plaintiff's Policy and that she has been damaged as a result.  *See Miller-Davis Co.*, 495 Mich. at 178.

The Court also finds Plaintiff has plausibly pleaded a breach of a contract implied in law claim.  "Under Michigan law, the theory of a contract implied-in-law is used interchangeably as an unjust enrichment claim."  *Miller v. MSX-IBS Holding, Inc.*, No. 16-CV-10596, 2016 WL 4138238, at *6 (E.D. Mich. Aug. 4, 2016) (citing *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546 (1991)).  Thus, Plaintiff has sufficiently pleaded her claim for the reasons discussed in Section III.B.2.i *supra*.

Accordingly, Defendant is not entitled to dismissal on either of the implied contract claims (Counts II and III).

20

### 3. Plaintiff cannot bring a conversion claim (Count IV).

Under Michigan common law, "[c]onversion arises from 'any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.'" *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 788 (E.D. Mich. 2014) (quoting *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391 (1992)); *see also* quoting *Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.*, 264 F.3d 622, 636–37 (6th Cir.2001), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010)). Likewise, there are two forms of statutory conversion:

> (a) Another person's stealing or embezzling property or converting property to the other person's own use.
>
> (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

MICH. COMP. LAWS § 600.2919a(1).

"To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted by plaintiff to his care." *El Camino Res., Ltd. v. Huntington Nat. Bank,* 722 F.Supp.2d 875, 915 (W.D. Mich. 2010) (citing *Garras v. Bekiares,* 315 Mich. 141 (1946)). "It is clear that when the dispute

21

is over moneys owed, conversion is only applicable in cases involving money that is the property of one party but held by another party (e.g., bank accounts, trusts, etc.) which is then wrongfully taken." *Sudden Serv., Inc. v. Brockman Forklifts, Inc.,* 647 F.Supp.2d 811, 815–16 (E.D. Mich. 2008) (citing *Trail Clinic, PC v. Bloch,* 114 Mich. App. 700 (1982)).   However, "Michigan law is well-established that parties cannot sue in tort over relationships governed by contract."   *Miller v. Joaquin,* 431 F. Supp. 3d 906, 914 (E.D. Mich. 2019) (citing *Ulrich v. Fed. Land Bank of St. Paul,* 192 Mich. App. 194, 199 (1991); *Brewster v. Martin Marietta Aluminum Sales, Inc.*, 145 Mich. App. 641, 668 (1985).

Here, despite their familial status, Plaintiff and Defendant do not have "a relation [] that would give rise to a legal duty without enforcing the [implied] contract promise itself." *Ulrich*, 192 Mich. App. at 199.   Nor does Plaintiff allege Defendant's "action caused harm outside duties imposed in [the implied] contract." *Miller*, 431 F. Supp. 3d at 914.   Thus, Plaintiff cannot proceed in tort, and Defendant is entitled to dismissal of her conversion claim (Count IV).   *See Abraham v. Am. Res. Co., LLC*, No. 20-13250, 2021 WL 5036151, at *5 (E.D. Mich. Oct. 28, 2021) ("Where the plaintiff's property right arises entirely from his or her contract rights, the plaintiff does not have a claim for conversion.") (citing *Llewellyn–Jones v. Metro Prop. Group, LLC*, 22 F. Supp. 3d 760, 788 (E.D. Mich. 2014)).

22

#### IV.   CONCLUSION

Accordingly, for the reasons articulated above, **IT IS HEREBY ORDERED** that the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss (ECF No. 15).  Specifically, the Court **GRANTS** the Motion as to Count IV and **DENIES** the Motion as to Plaintiff's remaining claims.

**IT IS FURTHER ORDERED** that the Court's September 16, 2021 Order (ECF No. 8) is **AMENDED** to state "At Counsel's request, ECF Nos. 1-2, 1-3, 1-4, and 1-5 are stricken."

**IT IS FURTHER ORDERED** that ECF Nos. 1-2, 1-3, 1-4, and 1-5 are **STRICKEN**.

**IT IS FURTHER ORDERED** that the Clerk of Court is ordered to **UNSTRIKE** ECF Nos. 4, 5, 6, and 7, which were stricken in the Court's September 16, 2021 Order (ECF No. 8), and **RESTORE** them on the docket.

**IT IS SO ORDERED**.


/s/ Gershwin Drain_____
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  May 4, 2022

23

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 4, 2022, by electronic and/or ordinary mail.
<u>/s/ Teresa McGovern</u>
Case Manager

24